1

2

3

4              **UNITED STATES DISTRICT COURT**

5                      **DISTRICT OF NEVADA**

6

7    DAVID EDWARD EUGENO ABARA,

8              Petitioner,                          3:10-cv-00688-HDM-VPC

9    v.
                                                    **ORDER**
10   JACK PALMER, *et al.*,

11             Respondents

12

13         Petitioner David Edward Eugeno Abara, a prisoner in the custody of the State of Nevada,

14   brings this habeas action under 28 U.S.C. § 2254 to challenge his 2006 Nevada state sentence for

15   obtaining and/or using another's personal identification information and burglary.  After evaluating

16   his claims on the merits, this Court denies Abara's petition for a writ of habeas corpus, dismisses this

17   action with prejudice, and denies a certificate of appealability.

18   **I. BACKGROUND**

19         As summarized by this Court's previous order of August 16, 2013:

20              On February 2, 2006, the State of Nevada filed a second amended information
           in the Second Judicial District Court for the State of the Nevada charging petitioner,
21         with one count of obtaining and/or using the personal identification information of
           another, one count of burglary, and being a habitual criminal. (Exhibit 26). After a
22         one-day jury trial, in which petitioner represented himself, with the assistance of
           stand-by counsel, the jury found petitioner guilty of obtaining and/or using the
23         personal identification information of another and burglary. (Exhibits 30 & 32). The
           state district court entered its judgment of conviction on November 8, 2006, and
24         sentenced petitioner to 96 to 240 months in prison for obtaining and/or using the
           personal identification information of another and 48 to 120 months in prison for
25         burglary, with the burglary sentence to be served consecutively to the first sentence
           and any other sentence being served by petitioner. (Exhibit 54). The District Court
26         ordered petitioner to pay restitution of $323.84. (*Id.*). Petitioner appealed. (Exhibit
           55). On April 4, 2007, the Nevada Supreme Court affirmed petitioner's convictions.
27         (Exhibit 70).

28                                            1

On February 15, 2008, petitioner, appearing *pro se*, filed a post-conviction petition in the state district court. (Exhibit 74). On June 27, 2008, the court appointed counsel to assist petitioner. (Exhibit 77). Subsequently, petitioner, through counsel, filed a supplemental petition for relief. (Exhibit 79). Without holding an evidentiary hearing, the District Court denied post-conviction relief on May 8, 2009. (Exhibit 83). Petitioner appealed the denial to the Nevada Supreme Court. (Exhibit 88). On June 9, 2010, the Nevada Supreme Court affirmed the District Court's decision. (Exhibit 95).

Petitioner dispatched his original federal petition for writ of habeas corpus to this Court on October 27, 2010. (ECF No. 12). Respondents moved to dismiss the petition. (ECF No. 15). By order filed August 22, 2012, this Court found the petition to be conclusory and granted petitioner leave to file an amended petition. (ECF No. 34). In the same order, the Court granted respondents an opportunity to file an answer or other response. (*Id.*). Respondents filed a motion to dismiss the first amended petition. (ECF No. 36). Petitioner filed an opposition. (ECF No. 42). Respondents filed a reply. (ECF No. 43).

(ECF No. 46 at 1–2).[1] This Court then granted the motion to dismiss, dismissing all counts.

Abara appealed, and the Ninth Circuit reversed the dismissals of grounds 1, 2, 7, and 9. (ECF No. 55). Respondents then filed an Answer to these grounds. (ECF No. 59). Abara filed his Reply. (ECF No. 67).

## II. FEDERAL HABEAS REVIEW STANDARDS

When a state court has adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. *Id.* at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *Id.* at 181–88. The petitioner bears the burden of proof. *Id.* at 181.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 17–23 (Exhibits 1–18, 20–109), ECF No. 60 (Exhibit 19), and ECF No. 68 (Exhibit 97). All page citations are to the page numbers of the documents themselves, rather than the ECF-generated page numbers.

applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Id.* at 16. A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *See, e.g.*, *id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). When a state court's factual findings based on the record before it are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls, which requires federal courts to be "particularly deferential" to state court factual determinations. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court's factual findings are presumed to be correct and the petitioner must rebut that presumption by "clear and convincing evidence." In this inquiry, federal courts may not look to any factual basis not developed before the state court unless the petitioner both shows that the claim relies on either (a) "a new rule of constitutional law, made

3

retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (b) "a factual predicate that could not have been previously discovered through the exercise of due diligence" and shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

When a state court summarily rejects a claim, it is the petitioner's burden to show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

## III.  ANALYSIS

### A.    Grounds 1 and 7

In Ground 1, Abara argues that the state district court denied him his Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel when it "erred in permitting [Abara] to represent himself during [the] jury trial, when [the court and his counsel] were aware that [Abara] had a mental health and controlled substance history." (ECF No. 35 at 3). The Supreme Court of Nevada rejected his claim on the merits, finding that he was competent to choose self-representation and that he knowingly, voluntarily, and intelligently waived his right to counsel. (Exhibit 70 at 1–3).

In his Reply, Abara effectively combined Grounds 1 and 7, and deemed them "inextricably interrelated." In fact, Abara's reply addresses *only* Grounds 1 and 7, leaving the State's responses to his claims in Grounds 2 and 9 unanswered. Ground 7 of the petition \argues that Abara was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel "when his request for substitute counsel was denied by the district court." (ECF No. 35 at 29). In Abara's Reply, he captions Grounds 1 and 7 as so:

> The trial court forced Abara into self-representation by failing to provide substitute counsel in the face of an actual conflict between Abara and counsel, where the relationship between Abara and counsel was irreconcilable, and where the court had notice that Abara failed to meet the heightened competency standard applicable to requests for self-representation.

(ECF No. 67 at 5 (capitalization altered); *see also id.* at 14 ("Combining Grounds One and Seven,

Abara contends that his waiver of the right to self-representation was involuntary and predicated on an antecedent unconstitutional ruling—the trial court's refusal to appoint substitute counsel despite Abara's actual, potential, and irreconcilable conflict with trial counsel Van Ry.")). Therefore, his arguments are that his "request for self-representation was not voluntary" because he "felt as though he had no choice due to an irreconcilable conflict with trial counsel"—which, "in conjunction with Abara's mental health condition . . . renders the trial court's decision to allow Abara to represent himself violative of Abara's Sixth Amendment right to counsel." (*Id.* at 5). And even if Abara's decision to proceed pro se was constitutionally sound, he was nonetheless denied his Sixth Amendment right to counsel because he "was forced to choose between self-representation and the prospect of proceeding to trial with [an ineffective] lawyer." (*Id.*). This Court does not agree.

Abara's preliminary hearing was on December 8, 2005; he was represented by Kevin Van Ry. (Exhibit 12 at 1). At the start of the hearing, his counsel informed the court that "Abara has indicated for quite some time now that he wishes to represent himself. He does not want me as his counsel, and, frankly, he thinks he can do a better job on his own." (*Id.* at 3). Therefore, counsel asked the court to consider that and do a *Faretta* canvass; it did. (*See id.* at 3–4). When asked if he wanted to represented himself, Abara explained, "I feel I have no other option. I've asked him to remove himself due to other conflicts that had gotten nowhere. I was—a competency hearing was called against my will, adding further length of time to this hearing. . . . It's been my intent to go forward. So I feel at this point in time my only other option, seeing there is conflict, is to represent myself." (*Id.* at 4). When the judge explained the perils of self-representation, including the inability to raise ineffectiveness of counsel on appeal, Abara wanted to make sure that he was still able to claim ineffective assistance of counsel for what had happened up until that point. (*See id.* at 5–6).

Abara explained that he has a bachelors degree from Cal State Hayward and "limited experience" in legal matters, which included his previous criminal charges and time he'd spent in the prison law library. (*Id.* at 7). He said that his health was "[e]xcellent" and that he was not taking any medications, but that there was a "competence hearing that states that he" had schizo-effective

5

disorder. (*Id.* at 7–8). When asked if he was being threatened or coerced into waiving his right to an attorney, Abara responded, "I feel that I am being coerced [by] Mr. Van Ry himself [by] his actions to the conflicts, and whatnots, I feel I have no other choice but to represent myself in order to get this to go forward." (*Id.* at 8). When asked if he "want[ed] to elaborate," Abara responded that he had been "requesting . . . a preliminary hearing for six months now." (*Id.*). But, he claimed that his counsel told him that he had to have the competency hearing, "he said, 'Because you would not listen to me'" because Abara "refused to listen to a [plea] deal offer." (*Id.* at 9).

The trial court asked the State if it wanted to weigh in before it made its ruling, and the State explained that it did not think that Abara was "necessarily freely and voluntarily waiving his right to counsel" because he kept "qualifying it with 'I've lost faith. I feel like I have to.'" (*Id.* at 13). The court took that advice and inquired further with Abara into why he felt that he had no choice. (*See id.* at 13–15). The court found that Abara was not capable of representing himself, and therefore denied his request to proceed pro se. The court explained that Abara could appeal this decision. Abara acknowledged that, but he never asked for different counsel. In fact, he had already been assigned different counsel when the public defender's office conflicted out. But he did not request to do so—he requested only to proceed pro se, and that request was denied.

At his arraignment two weeks later, Abara repeated his request to not "have a lawyer representing [him]." (Exhibit 16 at 2). He explained, "At this stage I feel that I'm capable of representing myself." (*Id.* at 2–3). When asked in the *Faretta* canvass, in light of the fact that the costs would be so minimal to him, if he "really want[ed] to forego all the benefits that a lawyer might be able to bring to [his] case," he responded that he did. (*Id.* at 3). The court further asked him about his education, his health, substance abuse, and whether there "would be any impediment in [his] ability to represent [himself]," he said no—and he hadn't used any drugs for the past six months. (*Id.* at 3–4). He said that he understood all of the elements of the three charges against him, when asked whether he was aware of and generally understood a litany of possible defenses, Abara said that he was. (*See id.* at 4–7). When the court discussed the advantages of a lawyer, and Abara's limitations being incarcerated, Abara explained that he thought that "there should be an ability to at

6

least have somebody do research [for him]." (*Id.* at 8). When asked if "anyone threatened or coerced [him] in any way to waive [his] right to have representation by an attorney," he responded, "No, sir." (*Id.* at 9).

At the end of the canvass, the court asked him if it could ask why he was waiving his right to an attorney. (*See id.* at 12). Abara replied that there "are conflicts that have not been resolved and are not going to be resolved" with his "specific lawyer." (*Id.*). The trial court explained that it did not think that representing himself was wise, and asked him to reconsider his position in the future, but authorized him to represent himself at trial. (*See id.* at 15). Then, the court said, Abara's current counsel would become his stand-by counsel. (*See id.*). Abara did not seem to mind, and responded instead to another part of the comment. (*See id.* at 16).

Just as in the preliminary hearing, the State raised the issue of Abara qualifying his desire to represent himself on "conflicts" with his counsel. (*See id.*). Therefore, the State asked that the record "be clear as to exactly what conflicts [Abara] believes exist and why he's making that decision. I just don't want to see a problem arise at the appellate level whereby he claims he is being forced to do this." (*Id.* at 17). Abara explained that "the biggest conflict" was that Abara joined a class action suit "that is direct at Jack Alian group in general"—and that his counsel was an independent contractor of the Jack Alian group (which, coincidentally, was the main source of public lawyers other than the public defender's office, with which Abara had a conflict that precluded them from representing him). (*Id.* at 18). He then explained that, "[s]econdarily is his prior jobs. He is an ex-prosecutor." (*Id.*). He then explained that he "had requested that a preliminary hearing go forward, and instead, [counsel] requested a competency hearing . . . when there was no need or any prior indication that a competency hearing should even be asked for." (*Id.* at 19). He explained his view that, "unless [he's] sitting there drooling and in restraints, then there is no reason" for a competency hearing unless he wants one himself. (*Id.* at 22). Indeed, he contends that he hasn't "exhibited any mental health issues." (*Id.*). Abara further rejected the notion that his counsel could have "the final say in anything that pertains to [him]." (*Id.* at 21). The court explained that it didn't "think that there is really a particular problem here with" Abara's counsel and therefore let Abara

7

represent himself. (*Id.* at 22).

"This set of occurrences, culminating in Abara representing himself at trial, forms the core of Abara's primary issue in federal post-conviction—Whether Abara was deprived of his Sixth Amendment right to counsel when the district court forced Abara to choose between self-representation and proceeding to trial with counsel with which Abara had developed an irreconcilable conflict." (ECF No. 67 at 10). What this set of occurrences shows, though, is not an irreconcilable conflict of constitutional proportions—it shows a defendant who did not like his counsel because he wanted his counsel to do exactly what he said. Choosing between that and self-representation is the same choice every defendant makes, and it does not form the basis for federal habeas relief.

Turning to the constitutional law, Abara does not contest the adequacy of the *Faretta* canvass. Instead, his claims are limited to whether his choice was voluntary based on the claim of an irreconcilable conflict with his counsel, thus rending the counsel constitutionally inadequate. (*See* ECF No. 67 at 11 ("The core of Abara's contention does not lie in the quality of either the justice of district court's *Faretta* canvass or even that Abara's waiver of his right to counsel wasn't knowing and intelligent. Abara contends his choice was involuntary. Abara would not have sought to represent himself had not he been saddled with a lawyer with whom Abara was embroiled in an irreconcilable conflict.")).

"Indigent defendants have a constitutional right to effective counsel, but not to have a specific lawyer appointed by the court and paid for by the public." *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010); *see also Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). When a trial court refuses to substitute in new counsel in the face of an irreconcilable conflict that effectively deprives a defendant of the effective assistance of counsel, the reviewing court must consider: "(1) the extent of the [irreconcilable] conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel." *Daniels v. Woodford*, 428 F.3d 1181, 1197–98 (9th Cir. 2005). This question is reviewed de novo: the issue is whether the state trial court "violated [Abara's] constitutional rights in

that the conflict between [Abara] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000).

As described above, the state trial court, through an in-depth inquiry, established that the conflict that Abara had with counsel was not for a "legitimate reason." *Daniels*, 428 F.3d at 1198; (*see* Exhibit 16 at 22). And while there might have been a slight hiccup in communications early on in the proceedings, it could not be characterized as a "serious breakdown." *Daniels*, 428 F.3d at 1198; *see also United States v. Richardson*, 894 F.2d 492, 496–97 (1st Cir. 1990) (upholding the district court's refusal to allow the defendant to replace court-appointed counsel with privately paid counsel on the morning of trial because "expressed his general dissatisfaction with Ward without expressing any specific breakdowns in communication or refusals to cooperate"). Most importantly, of course, the conflict was not "irreconcilable" because it was reconciled. Not only did Abara have no problem with his counsel representing him as standby counsel, but his counsel testified—without contradiction from Abara—that the two had several discussion about both the case and about general principles of constitutional law, and about the case at issue *as well as* the other cases that were pending against Abara at the time. (*See* Exhibit 16 at 17–18). These conflicts, even as perceived by Abara did not create a "significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026.

The Supreme Court of Nevada's holding that Abara's decision to proceed pro se was constitutionally free from error did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law as clearly established by the U.S. Supreme Court.

Grounds 1 and 7 provide no basis for habeas relief.

**B.    Ground 2**

In Ground 2, Abara argues that his sentence violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. (ECF No.

35 at 10).  The Supreme Court of Nevada rejected his claim on the merits.  (Exhibit 70 at 3–4).

His rights were violated, he contends, because the trial court thought, based on the pre-sentence report, that Abara had committed fifteen prior convictions, of which nine were felonies and six were misdemeanors.  (*Id.*).  He argues that he actually only had one felony, as the rest had been reduced to misdemeanors or were never felonies in the first place.  (*Id.*).  Indeed, a sentence based on erroneous information violates due process.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

Abara did not object to this information when it was presented by the State during sentencing, nor when it was included in the pre-sentence report or the sentencing recommendation.  (*See* Exhibit 53 at 6; *see also* Exhibit 35 (pre-sentence report); Exhibit 52 (sentencing recommendation)).  Therefore, any objection is subject to plain error review.  *See United States v. Lindsey*, 634 F.3d 541, 554–55 (9th Cir. 2011); *accord Lamb v. State*, 251 P.3d 700, 703 (Nev. 2011).  To reverse under plain error, there must be "(1) an error (2) that is plain and (3) that affects substantial rights."  *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1146 (9th Cir. 2012); *accord Green v. State*, 80 P.3d 93, 95 (Nev. 2003).  Abara has not carried his burden of showing that there was any error here, let alone clear error.  There is no evidence in the record that the characterizations of his criminal record were incorrect.  *See Lechner v. Frank*, 341 F.3d 635 (7th Cir. 2003); *Villafuerte v. Stewart*, 111 F.3d 616, 628 (9th Cir. 1997).  Thus, he has failed to meet his burden.

Abara also argues that the trial court "did not reason its sentencing analysis as required by law."  (ECF No. 35 at 11).  But federal due process rights are not violated simply because a state trial court failed to follow the proper state procedure.  *See Engle v. Issac*, 456 U.S. 107, 119 (1982); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980).  And while the Due Process Clause protects against the deprivation of liberty interests, the alleged statutory requirement does not create a liberty interest under the Fourteenth Amendment because the fact that the state court must "reason its sentencing analysis" does not place "substantive limitations on official discretion."  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (requiring that, for a procedural state law to create a liberty interest, the state law contain "specific directives to the decision-maker that if the regulations' substantive predicates are present, a particular outcome

10

1  must follow"). Otherwise, "the record shows that he has had a full and fair opportunity to have his

2  case heard." *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).

3      Therefore, the only other federal constitutional issue which Abara appears to raise is the

4  Eighth Amendment's prohibition on cruel and unusual punishment. "[O]nly extreme sentences that

5  are 'grossly disproportionate' to the crime" violate the Eighth Amendment. *United States v. Bland*,

6  961 F.2d 123, 129 (9th Cir. 1992) (citation omitted). Abara was sentenced to prison terms of 96 to

7  240 months for felony obtaining/using someone else's personal information and 48 to 120 months

8  for felony burglary, with the latter being consecutive to the former, which in turn is consecutive to

9  any other sentence he was then serving. (Exhibit 54). The sentences here, while substantial, were

10 not "grossly disproportionate" to the crimes of using another's personal documentation and obtaining

11 it by manipulation—especially given Abara's significant criminal history, including three relatively

12 recent offenses and other pending charges, many of which bore similar hallmarks of manipulation.

13 As the State said at sentencing, "it's taking advantage of people over and over and over again."

14 (Exhibit 53 at 7). Moreover, because the Nevada Supreme Court denied this claim on the merits,

15 relief is available only if its decision was contrary to or an unreasonable application of clearly

16 established U.S. Supreme Court case law. *See Ramirez v. Castro*, 655 F.3d 755, 773 (9th Cir. 2004).

17 But the "precise contours" of the gross disproportionality principle are "unclear" and warrant federal

18 habeas relief only in "exceedingly rare cases." *Lockyer v. Andrade*, 538 U.S. 63, 72–23 (2003).

19 This is not one of those cases.

20     The Supreme Court of Nevada's holding that Abara's sentence was constitutionally free from

21 error did not involve an unreasonable determination of fact, nor was it contrary to, or an

22 unreasonable application of, federal law as clearly established by the U.S. Supreme Court.

23     Ground 2 provides no basis for habeas relief.

24 **C.    Ground 9**

25     In Ground 9, Abara argues that he was deprived of his Sixth and Fourteenth Amendment

26 right to effective assistance of appellate counsel for failing to raise the claim that the state trial court

27 erred in two of its jury instructions. (ECF No. 35 at 39). He contends that Instructions 15 and 22

28                                                      11

were "incorrect statement[s] of law which reduced the State's burden of proof." (*Id.*). The Supreme Court of Nevada rejected these claims on their merits because one "was a correct statement of the law" and the other, while "clumsily worded," nonetheless "defines the necessary elements of the crime." (Exhibit 95 at 2). Therefore, he "failed to establish . . . a reasonable probability of success on appeal." (*Id.*).

To establish a claim of ineffective assistance of appellate counsel, a petitioner must show: (1) that his appellate counsel was objectively unreasonable; and (2) there "is a reasonable probability that, but for counsel's [unprofessional errors], he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *cf. Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *see also Davila v. Davis*, 137 S. Ct. 2058, 2067 ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."). Courts evaluate a counsel's performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct well within the wide range of reasonable conduct. *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004). When a state court has reviewed the claim, a federal court's habeas review is "doubly deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Pinholster*, 563 U.S. at 190, 202.

Abara first objects to Instruction 15 because it "makes no sense. A read of the instruction causes one to question why it was given and the goal of the actual instruction." (ECF No. 35 at 39). The instruction read:

> No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial.
> The identity of the person who is alleged to have committed a crime is not an element of the crime nor is the degree of the crime. Such identity or degree of the crime may be established by an admission or confession.

(Exhibit 31 at 17). Under Nevada state law, that is correct. *See* Nev. Rev. Stat. §§ 205.060,

205.463; *State v. Fouquette*, 221 P.2d 404, 418 (1950) (holding that the identity of the perpetrator is not an element of the *corpus delicti*); *cf. Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) ("[F]ederal courts must look to state law for 'the substantive elements of the criminal offense' . . . ." (citation omitted)).

Abara next objects to Instruction 22 because it "is a sentence which stops in the middle. . . . The jury was instructed that identify was not in issue in the case. The case involved a question of identity theft. Identity is a key issue to the charge." (Exhibit 35 at 39–40). The instruction read:

> Every person who knowingly obtains any personal identifying information of another person and uses the personal identifying information to harm that other person or for any unlawful purpose, including, without limitation, to obtain credit, a good, a service or anything of value in the name of that person.

(Exhibit 31 at 24). Abara is correct that this stops mid-sentence, but it nonetheless properly defines the elements of the crime. *See* Nev. Rev. Stat. § 205.463. Moreover, as explained above, "identity" is not an element of the crime under Nevada law.

On doubly deferential review, Abara's appellate counsel was not ineffective for failing to raise this claim. Therefore, the Supreme Court of Nevada's holding that Abara's appellate counsel was not ineffective did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law as clearly established by the U.S. Supreme Court.

"[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Instead, "the only question" is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The review is done in conjunction with the trial record as a whole, and when reviewing an ambiguous instruction, the question is whether "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). A jury instruction that reduces "the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004) (quoting *Cool v. United States*, 409 U.S. 100, 104 (1972)), *overruled on other grounds by Byrd v. Lewis*, 566 F.3d

13

855, 866 (9th Cir. 2009). In light of all the instructions the court cannot conclude that the questioned instructions infected the trial as to violate due process. Even if there were constitutional error, Abara is entitled to relief only if "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Dixon v. Williams*, 750 F.3d 1027, 1034 (9th Cir. 2014). If a court believes, "with fair assurance, . . . that the judgment was not substantially swayed by the error," then habeas relief is not warranted. *Dixon*, 750 F.3d at 1034 (citation omitted). Importantly, though, the question is not "merely whether there was enough [evidence] to support the result . . . . It is rather, even so, whether the error itself had substantial influence." *Id.* (citation omitted). If a court is left in "virtual equipoise," then it must grant relief. *Id.* (citation omitted).

The Nevada Supreme Court found that any error would have been harmless, in its view, in light of the overwhelming evidence of guilt. Without according any deference to this determination, this Court agrees with that assessment. *See Dixon*, 750 F.3d at 1035 ("[C]ourts apply the *Brecht* test without regard for the state court's harmlessness determination." (citation omitted)).

Ground 9 provides no basis for habeas relief.

**IV. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that **Abara's petition for a writ of habeas corpus is DENIED** on the merits, and this action is **DISMISSED with prejudice**.

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a **certificate of appealability is DENIED**. The Clerk of Court is directed to **enter judgment, in favor of respondents and against Abara, dismissing this action with prejudice**.

DATED: September 18th, 2017.

_Howard D. McKibben_
_____
Howard D. McKibben
Senior United States District Judge

14